# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**United States of America**,

       *Plaintiff*,

v.        Case No.  3:13-cr-037
       Judge Thomas M. Rose

**Lashawnda Robinson,**

       *Defendant*.

---

**ENTRY DENYING GOVERNMENT'S MOTION TO RECONSIDER. DOC. 45.**

---

Pending before the Court is Government's Motion to Reconsider. Doc. 45. Therein, the government requests that the Court reconsider its ruling granting Motion in Limine by Defendant Lashawnda Robinson. Doc. 31. Therein, Defendant requested that the Court exclude from trial:

1. Any testimony offered by Good Samaritan or Crisis Care hospital personnel (physician, therapist, nurse) concerning any statement [Defendant] made in the course of mental health diagnosis and/or treatment.

2. Any medical/hospital records related to [Defendant's] mental health treatment and/or diagnosis.

1

Doc. 31.  Because the admitting nurse was a necessary intermediary to receiving psychotherapy from the Crisis Care counselor and emergency room doctor, the motion was granted.

**I.      Background**

According to the government complaint, on January 10, 2013, United States District Judge Timothy S. Black sentenced Defendant's brother to 162 months' imprisonment. Doc. 1, ¶ 9.  Defendant's brother was convicted of two counts of being a felon in possession of a firearm and possession of marijuana with intent to distribute. *United States v. Robinson*, 3:12-cr-032 (S.D. Ohio 2012).  Defendant claims that the guns were hers, that she received them by inheritance and that she brought them into the house. Doc. 28-1, at 13.  Representing the government in that case were Assistant United States Attorneys Sheila Lafferty and Mona Guerrier. *Id.*   Defendant's brother was represented by Danny O'Brien. *Id.*

Defendant reacted to her brother's sentencing with outrage, including thoughts of harming those involved in her brother's conviction.  She also suffered from suicidal ideation and migraines. Doc. 28-1 at 12.   While Defendant had been treated for Multiple Sclerosis by a neurologist, she understood that she could not see that neurologist for another 10 months. Doc. 28-1, at 12.

She sought help.  Defendant called East Way Behavioral Health Care, a mental health care provider. *Id.*   She told them she felt like killing herself, as it was her fault her brother was convicted of gun charges. *Id.*   She was told to go to Crisis Care at Good Samaritan Hospital. *Id.*, at 13.  Defendant's hospital records memorialize that, upon arrival at the hospital, "Patient present[ed] with psychiatric problems." Doc. 41 at 11, 28, 41.  Defendant reported suicidal ideation, homicidal ideation and migraines. *Id.*   As she was being admitted to the hospital, an

2

attending nurse, Dianne Wilz, was preparing to secure Defendant's purse, Defendant asked if the purse would be searched. Doc. 1, ¶ 4. Wilz told her that if Defendant was admitted, her purse would be inventoried and stored until she was released. *Id.* The complaint alleges that Defendant then stated that when she was released from the hospital, she intended to kill some people. Robinson then is alleged to have claimed that she had syringes filled with bleach in her purse and she intended to use the syringes to kill them. Upon questioning, Defendant said that her brother was sentenced to thirteen and a half years in prison for a crime he did not commit, claiming that she had actually committed the crime for which her brother had been sentenced. *Id.* ¶ 5.

When Wilz asked whom Defendant intended to kill, Defendant rattled off: Judge Black, his family, nieces, nephews, and grandchildren. Wilz thought Robinson was angry and serious about the threats.

A mental health counselor, Iris Blanchard, then interviewed Defendant. Defendant is alleged to have told Blanchard that she wanted to "hurt Judge Black, Judge Black's family, the assistant federal prosecutor, and Danny O'Brien." *Id.* ¶ 6. Defendant is alleged to have claimed that she planned to inject these people with the bleach in the syringes. *Id.* Defendant is then alleged to have said that she wanted these people to feel the pain and anguish her family was going through. *Id.* Blanchard informed Defendant that she had a duty to report what she considered to be threats, at which point Defendant is alleged to tell Blanchard, "We never had this conversation." *Id.* Blanchard recommended involuntary hospitalization, an individualized treatment plan, and a warning to law enforcement officers. Doc. 41 at 5. The emergency room physician agreed. *Id.*

3

The hospital called the Dayton Police Department. Their interview caused Defendant to become combative and uncooperative. Doc. 41 at 15. The Police arrested Defendant and charged her with misdemeanor carrying of a concealed weapon, based upon the possession of the bleach-filled syringes. Upon being informed of the charges, Defendant indicated that she did not want to make any statements. However, the government alleges that Defendant made unsolicited incongruous statements to the effect that she had the syringes for personal protection, that she did not intend to inject anyone with the bleach, but she intended to shoot them. *Id.*

The federal government charged Defendant with one count of threatening to assault and murder a United States Judge and one count of threatening to assault and murder a United States Attorney, both charges constituting violations of 18 U.S.C. § 115(a)(1)(B). As trial approaches, Defendant has moved the Court to exclude statements and records relating to her efforts to obtain psychiatric treatment. Doc. 31. When the Court granted this motion, doc. 44, the government moved it to reconsider. Doc. 45.

**II.   Legal Standard**

Although the Federal Rules of Criminal Procedure make no provision for motions to reconsider, "Courts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e)." *United States v. Titterington*, No. CR. 2–20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003) (citing *United States v. Sims*, No. CR. 00–193 MV, 2003 WL 1227571, at *4 (D.N.M. Mar.11, 2003), *United States v. Thompson*, 125 F. Supp.2d 1297 (D. Kan. 2000)). Under Federal Rule of Civil Procedure 59(e), the Sixth Circuit has held motions to alter or amend judgment "may be granted if there is a clear error of law, newly

4

discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999) (internal citations omitted). "This is an 'extraordinary' motion and 'is seldom granted because it contradicts notions of finality and repose.'" *AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, No. 3:09–cv–00255, 2012 WL 4442665, at *8 (M.D. Tenn. Sept.21, 2012) (quoting *Waiters v. City of Cleveland*, No. 1:08–CV–2006, 2009 WL 3063384, at *1 (N.D. Ohio, Sept. 24, 2009)).

The motion "is proper only if it contains 'an argument or controlling authority that was overlooked or disregarded in the original ruling, presents manifest evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law.'" *Auday v. Wet Seal Retail, Inc.*, No. 1:10–CV–260, 2012 WL 124080, at *1 (E.D. Tenn. Jan.17, 2012) (quoting *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003)). "A Rule 59(e) motion 'may not be used to argue a new legal theory.'" *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, LLC, 477 F.3d 383, 395 (6th Cir. 2007) (quoting *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). "Rather, a motion under Rule 59(e) 'must either clearly establish a manifest error of law or must present newly discovered evidence.'" *Id.* (quoting *World Univ., Inc.*, 978 F.2d at 16). "Rule 59(e) motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued." *World Univ., Inc.*, 978 F.2d at 16; see also *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (emphasis in original) (internal citations omitted). The Fourth Circuit has held that "[w]hen the evidence forming the basis for a party's motion for reconsideration was in the movant's possession at the time of the initial hearing ... the movant must provide a legitimate reason for failing to introduce

5

that evidence prior to the court's ruling." *United States v. Dickerson*, 166 F.3d 667, 679 (4th Cir. 1999).

**III.    Analysis**

The Sixth Circuit recognizes the existence of a psychotherapist-patient privilege protecting from compelled disclosure communications between licensed psychotherapists and patients made in the course of treatment or diagnosis. *United States v. Hayes*, 227 F.3d 578, 581-82 (6th Cir. 2000), citing, *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).   In *Jaffee*, the Supreme Court reasoned that "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem.   The mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Jaffee*, 518 U.S. at 11.   To be effective, this privilege must be "categorical enough to achieve its announced policy objective." *Jaffee*, 518 U.S. at 19 (Scalia, J., dissenting).

Recognizing that "[t]he mental health of our citizenry . . . is a public good of transcendent importance," the Supreme Court noted that

> a psychiatrist's ability to help her patients "is completely dependent upon [the patient's] willingness and ability to talk freely. This makes it difficult if not impossible for [a psychiatrist] to function without being able to assure . . . patients of confidentiality and, indeed, privileged communication.  Where there may be exceptions to this general rule . . ., there is wide agreement that confidentiality is a *sine qua non* for successful psychiatric treatment.

*Id.* at 10-11.

The government advanced three positions against applying the psychotherapist-patient privilege in the instant case: (1) Rule 501 of the Federal Rules of Evidence does not provide for it,

6

(2) a claim that Robinson was not seeking psychotherapy, but hospital admission, and (3) Ohio case law and that of one federal circuit would narrowly construe the psychotherapist-patient privilege to only cover communications with licensed psychotherapists. The government itself admits that the Sixth Circuit has rejected its first position in *Hayes*.

The Court finds no factual basis for the government's assertion that Defendant was not seeking psychotherapy. She was seeking treatment for homicidal ideations, suicidal ideations and migraines. She called a mental health provider and was directed to go to the hospital. She went to the hospital and presented "psychiatric problems." Doc. 41 at 11, 28, 41. The government complaint asserts that Defendant "was being treated" and her statements occurred "[d]uring her treatment." Doc. 1, ¶4. Defendant did exactly what society wants anyone in her situation to do. Unfortunately, she has now languished in jail for over a year, creating misgivings as to whether she will choose so well in the future.

As to the Ohio case, *In re Smith*, 7 Ohio App. 3d 75, 77-78 (2nd Dist. 1982), the Federal Rules of Evidence make clear by its text that privileges in cases governed by federal law are likewise governed by federal case law. Fed. R. Evid. 501 ("But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); see also *United States v. Bek*, 493 F.3d 790, 801-802 (7th Cir. 2007). While *Jaffee* looked to the states to discern a consensus for recognizing a psychotherapist-patient privilege in federal law, federal courts do not look to state law to define its scope. This would contravene the direction in the committee note that "privileges shall continue to be developed by the courts of the United States under a uniform standard applicable in both civil and criminal cases." Fed. Rule Evid. 501 (comment).

*In re Smith*, is inapposite in any event, since, as counsel for Greene County Child Services Board established in that case, the party seeking to assert the privilege was not voluntarily seeking help. *In re Smith*, at 78. Rather, one of the board's caseworkers had brought the party to be examined. Here, Defendant voluntarily went to the hospital seeking psychiatric help.

Much more supportive of the government's position is *United States v. Ghane*, 673 F3d 771 (8th Cir. 2012),[1] wherein the Eighth Circuit found statements made to an intake nurse by a man who had requested to see a psychologist were not covered by the privilege, as the intake nurse was neither licensed in psychotherapy, nor engaged in treatment. The defendant in *Ghane* sought treatment for suicidal and homicidal thoughts. The Eighth Circuit perceives the intake nurse as limited to hospital admission. However, how would a person in Ghane's position or the instant Defendant's position be admitted for treatment if not by disclosing symptoms to an admitting nurse? The result of the Eighth Circuit position is a heightened possibility that troubled individuals will avoid treatment that might help them manage their behavior, leaving society to deal with them after they have succumbed to the thoughts that torment them and made an attempt, successful or not, to carry them out. This Court rejects that position.

In the context of the attorney-client privilege, necessary intermediaries to receiving legal counsel are equally covered by the privilege. In considering whether a client's communication with his or her lawyer through an agent is privileged under the intermediary doctrine, the

---

1 *United States v. Romo*, 413 F.3d 1044, 1045 (9th Cir. 2005), upon which *Ghane* relies, is inapposite, as it concerned statements made to a correctional officer who was "a licensed professional counselor [but] whose job included providing inmates with psychological counseling and a host of other duties, ranging from arranging social events to providing classes and acting as a case manager." In *Romo* there was no indication the defendant was seeking psychological counseling when he spoke. In the instant case that ambiguity is absent.

8

"critical factor" is "that the communication be made 'in confidence for the purpose of obtaining legal advice from the lawyer.'" *In re Lindsey*, 158 F.3d 1263, 1280 (D.C. Cir. 1998) (citing *Linde, Thomson, Langworthy, Kohn & Van Dyke v. Resolution Trust Corp.,* 5 F.3d 1508, 1514 (D.C. Cir. 1993) (emphasis removed) (quoting *FTC v. TRW, Inc.*, 628 F.2d 207, 212 (D.C. Cir. 1980)). In the instant case, Defendant made communications in confidence for the purpose of obtaining psychotherapy.

The Ninth Circuit has rejected the notion that the psychotherapist-patient privilege is limited to licensed therapists. *Oleszko v. State Compensation Ins. Fund*, 243 F3d 1154, 1157 (9th Cir. 2001) (extending privilege to employee assistance program counselors)(citing *United States v. Lowe*, 948 F. Supp. 97 (D. Mass. 1996)(extending the privilege to trained but unlicensed rape crisis counselors who report to nurses); and *Greet v. Zagrocki*, 1996 WL 724933, *2 (E.D. Pa. 1996)(extending privilege to employee assistance program counselors)). For the privilege to have meaning, it must extend to individuals engaged in admitting a patient for mental health treatment.

The Court is particularly persuaded by the analysis of *Bull v. City of San Francisco*, 2003 WL 23857823 (N.D. Cal. 2003), which rejected an assertion of the privilege to cover intake nurses at a jail. The defendant in *Bull* made statements to jail intake nurses as part of a process to determine where in the jail defendant should be placed. The court reasoned:

> Even if the Court assumes that confidential communications between a nurse and patient are covered by the privilege, the privilege does not apply for several reasons. First, based on the Court's examination of the two withheld documents (which Ms. Bull submitted for *in camera* review), there was no psychotherapy involved. Second, the communications between the nurses and Ms. Bull did not take place during the course of diagnosis or treatment. That is, Ms. Bull was not seeking a diagnosis or treatment from the

9

> nurses; rather, the nurses were seeking information from Ms. Bull as part of intake screening, more specifically, for the purpose of determining where to place her in the jail. Third, for similar reasons, Ms. Bull did not have a reasonable expectation of confidentiality in the communications. She was not speaking to the nurses for the purpose of diagnosis or treatment but rather to the nurses as representatives for the jail.

*Bull v. City and County of San Francisco*, 2003 WL 23857823, *1 (N.D. Cal. 2003).

Here, Defendant sought treatment at the hospital; her statements were made in the course of treatment. Defendant was speaking to the nurse for the purpose of being admitted to receive treatment. As such, she had a reasonable expectation of confidentiality in the communication. Moreover, she was seeking this admission at the direction of East Way Behavioral Health Care. By the Northern District of California's reasoning, which this Court adopts, the privilege should apply.

The Court notes that the Sixth Circuit analyzes the question as if it has been resolved that the privilege extends to nurses. See *United States v. Bishop*, 149 F.3d 1185, 1998 WL 385898, *5 (6th Cir. 1998)(finding statements made to doctor and nurse admissible at trial not because the privilege did not extend to nurses, but because the privilege was waived by statements concerning the privileged conversation made to officers).

The government advances two reasons for the Court to reconsider its prior ruling. The government would have the Court consider Justice Scalia's dissent in *Jaffee* and urges the Court to find any psychotherapist-patient privilege in this case waived by virtue of Defendant's proffered jury instructions. Justice Scalia's dissent was available to the government at the time of its initial response in opposition to Defendant's motion. As such, it is an improper basis for a motion to reconsider, even if dissenting opinions normally provided a basis for decisions.

10

In any event, the privilege is now established.  At this point, even Justice Scalia would have the privilege be "categorical enough to achieve its announced policy objective." *Jaffee*, 518 U.S. at 18-19 (Scalia, J., dissenting).

As to the government assertion that Defendant has waived the privilege by virtue of its proposed jury instructions, while this would provide a proper basis for a motion to reconsider, it misprizes the law.  A defendant is entitled to a jury instruction only if evidence supports his theory. *United States v. Mercer*, 853 F.2d 630, 633 (8th Cir. 1988). *United States v. Johnson*, 737 F.3d 522, 526 (8th Cir. 2013).   To date, no evidence has been adduced.

Moreover, waiver arises only when a defendant raises her mental state as an element of her claim or defense, and not when she raises it to negate an element of the government's proof. *United States v. Sturman*, 1998 U.S. Dist. LEXIS 3488 at *10 (S.D.N.Y. Mar. 20, 1998), citing, 3 Weinstein's Federal Evidence, §§ 504.01, 504.07(7) (2d ed. 1997) (citing Supreme Court Standard 504).  "Unless and until [Defendant] proceeds with such a defense at trial, [s]he cannot be said to have waived [her] rights under the psychotherapist-patient privilege." *Sturman*, 1998 U.S. Dist. LEXIS 3488 at 12. In short, a plaintiff must use the privileged communication as evidence herself before she waives the privilege. *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 229-30 (D. Mass. 1997) (finding that a claim for intentional infliction of emotional distress did not waive the privilege unless Plaintiff relied upon the substance of communications with a psychotherapist).

### III.    Conclusion

Because Defendant was seeking psychiatric treatment, any statements she made in the process of obtaining treatment including statements to necessary intermediaries are privileged.

11

Were they not, persons in Defendant's position would not be able to seek the treatment they desperately need and that society wants them to seek. Any statements made by Defendant at the hospital to hospital personnel are privileged and are excluded from trial. Similarly, hospital records concerning Defendant are excluded from use at trial.²

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, March 19, 2014.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

2 The privilege does not apply to evidence derived from the protected statements, such as Defendant's statements to police officers, as the privilege does not extend to fruits of the tree, as the privilege is not constitutionally mandated. See *United States v. Highsmith*, 2007 WL 2406990, *4 (S.D. Fla. 2007). Evidence relating to the syringes in Defendant's purse is relevant.

12